**Bruce A. THOMPSON, Plaintiff,**

v.

**PLANTE & MORAN, a Michigan partnership, Edward M. Parks, a Michigan resident, and William L. Mathews, a Michigan resident, Defendants.**

No. 1:94–CV–778.

United States District Court,
W.D. Michigan,
Southern Division.

Aug. 21, 1995.

Robert W. Smith, Silverman, Rodbard & Smith, P.C., Kalamazoo, MI, for plaintiff.

Charles E. Ritter, Miller Canfield Paddock & Stone, Kalamazoo, MI, for defendants.

## MEMORANDUM OPINION

McKEAGUE, District Judge.

This case presents claims of violation of the Americans With Disabilities Act (ADA), 42 U.S.C. § 12101 et seq.; violation of the Michigan Handicappers' Civil Rights Act (MHCRA), M.C.L. 37.1101 et seq.; breach of fiduciary duty;[1] and breach of contract. Now before the Court is defendants' motion for summary judgment on all claims.

### I

Plaintiff, a certified public accountant (CPA), was an audit partner with defendant Plante & Moran (hereinafter "P & M" or "defendant") and partner-in-charge of its Kalamazoo, Michigan, office. Defendant Edward Parks was the managing partner of P & M for most of the time relevant to this lawsuit. Defendant William Mathews is currently the managing partner of P & M and was second-in-command at all times relevant to this lawsuit.

In 1986, plaintiff was beset by personal problems. His wife was diagnosed with terminal cancer and he was forced to seek professional treatment for his alcoholism. In October 1987, plaintiff suffered a heart at-

tack and underwent quintuple bypass surgery. He returned to work at P & M in December 1987.

In the spring of 1988, plaintiff asked to be relieved of his duties as partner-in-charge of defendants' Kalamazoo office. Plaintiff claims he wanted to reduce the stress level caused by the combination of his personal problems and his job responsibilities. In the fall of 1989, plaintiff and defendant discussed the possibility of plaintiff's filling the position of chief financial officer. After several discussions, a job proposal was made to plaintiff, which he refused because he was not satisfied with it. On February 22, 1990, plaintiff signed an early retirement agreement, stipulating that he would continue as an audit partner until June 30, 1993, at which time he would retire.

In the fall of 1990, plaintiff asked to be considered totally disabled, based on his assertion that P & M had failed to accommodate his need for a position with a reduced stress level. A disability retirement agreement (DRA) was negotiated, which set forth the following provisions: plaintiff would be classified as totally disabled effective January 1, 1991, would receive total disability benefits from P & M for three and one-half years, and then would retire effective June 30, 1994. Subsequent to signing the DRA, plaintiff moved from Michigan to Oregon.

In 1992, plaintiff returned to Kalamazoo and asked to be re-employed by P & M in a reduced capacity with regard to both hours and responsibilities. P & M refused to re-employ plaintiff, citing the explicit provisions set forth in the DRA. Plaintiff returned to Oregon and commenced legal action.

A hearing was held on April 24, 1995, at which it became clear to the Court and the parties that the dispositive factor is the interpretation and effect of the DRA. At the hearing, the Court raised the issue of whether the ADA and MHCRA were applicable to this case and whether, if the DRA precludes plaintiff's ADA and MHCRA claims, rights based on these statutes are waivable. The

---

1. The breach of fiduciary duty claim is directed at the individual defendants, Edward M. Parks and William L. Mathews.

parties were ordered to file supplemental briefs on these issues. The Court has reviewed the original pleadings and the supplemental briefs, and considered the arguments set forth at the hearing, and now considers this matter ripe for decision.

## II

Summary judgment is appropriate when the record reveals that there are no issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby,* 477 U.S. at 251–52, 106 S.Ct. at 2512. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.,* 477 U.S. at 247–48, 106 S.Ct. at 2510 (emphasis in original).

The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). However, the moving party is not required to expressly negate the opponent's claim. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. The movant satisfies its initial burden merely "by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989).

Once the movant makes a sufficient showing of an absence of evidence to support the non-moving party's case, the non-moving party then assumes the burden of coming forward with evidence demonstrating a genuine issue of material fact. *Celotex,* 477 U.S. at 324–25, 106 S.Ct. at 2553–54. The non-moving party may not rest on the mere allegations contained in the pleadings, but, rather, must set forth specific facts showing that there is a genuine issue for trial. Fed. R.Civ.P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient." *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512. The non-moving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Barnhart v. Pickrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1389 (6th Cir.1993).

"As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510. And an issue of material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356.

This Court has at least some discretion in evaluating the non-moving party's evidence and in determining whether that party's claim is plausible. *Barnhart,* 12 F.3d at 1389. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims." *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2553.

## III

Plaintiff purports to state discrimination claims under the ADA and MHCRA but, in fact, has produced absolutely no evidence whatsoever in support of these alleged

claims. Plaintiff's only real claim against defendant is his allegation that he was entitled to be re-employed by defendant, pursuant to the terms of the DRA, if he were to become no longer totally disabled. Plaintiff concedes that "[t]he DRA is a valid and binding agreement," but argues that "[n]one of the parties took into consideration that [plaintiff's] total disability might not be permanent and he may want to return to P & M as an 'active partner' and those contingencies were not addressed in the DRA." Plaintiff's brief in opposition, p. 10. Therefore, this case is actually a contract dispute and will be treated as such by the Court. As a threshold matter, however, the Court must determine whether a cause of action based on the ADA can be waived by a superseding agreement.

As already noted, the Court concludes that the DRA is the controlling basis of this case. And the Sixth Circuit, after noting that "public policy does not prohibit an otherwise valid release from acting as a waiver of a federal statutory cause of action," held that such waivers are governed by "normal contract principles" and "will be enforced absent the typical exceptions for fraud, duress, lack of consideration or mutual mistake." *Shaheen v. B.F. Goodrich Co.*, 873 F.2d 105, 107 (6th Cir.1989). The Sixth Circuit specifically stated that such waivers do not violate public policy when applied to causes of action brought under the ADEA, the EPA, Title VII and 42 U.S.C. § 1981. *Id.* at 107, n. 2. In this Court's opinion, this reasoning applies with equal force and logic to claims brought under the ADA. And although the Michigan Supreme Court has not directly addressed this issue, the Court concludes that it would apply this analysis to claims brought under the MHCRA. See *Sumner v. Goodyear Tire & Rubber Co.*, 427 Mich. 505, 525, 398 N.W.2d 368 (Mich.Sup.Ct.1986) (noting the analogous relationship of the MHCRA to Title VII, and stating that "[i]t is therefore appropriate that we, as we have done in the past in discrimination cases, turn to federal precedent for guidance"). Therefore, the Court concludes that plaintiff's voluntary and

fully informed entry into the DRA constituted a knowing waiver of any allegedly implicated statutory rights under the ADA or MHCRA. Accordingly, defendants will be granted summary judgment as to these two claims.

■ The DRA provides that plaintiff is " 'totally disabled' as that term is used in the Partnership Agreement, effective January 1, 1991." DRA, ¶ 1. The Partnership Agreement (PA) states that "[a] partner will be considered to be totally disabled ... upon the vote of at least two-thirds (⅔) of the active partners." PA, Art. 21.3. The DRA also sets forth the terms and amounts of plaintiff's disability compensation for the period January 1, 1991 to June 30, 1994, and expressly states that "[o]n June 30, 1994, Thompson shall retire and be deemed retired from Plante and Moran." DRA, ¶¶ 3 and 4.[2]

Both parties acknowledge that the DRA is silent in regard to the issue whether plaintiff had the right to claim he no longer was *totally* disabled and could demand that he be re-employed under conditions that, from his perspective, would accommodate his less-than-total disability. Resolution of this question requires the Court to determine whether the relevant contractual provisions are ambiguous or unambiguous: if unambiguous, the Court merely enforces those provisions; if ambiguous, however, the Court must construe the provisions and, given that a summary judgment motion is presently before the Court, determine whether plaintiff has established a genuine issue of material fact in this regard.

The DRA initially refers to plaintiff as "totally disabled" but subsequently (and repeatedly) refers only to "his disability status." Although logically it would appear that "his disability status" refers to "totally disabled," the Court cannot say with absolute certainty, in light of the entire DRA and the reference in the PA to "illness or incapacity," that this is so. Accordingly, the Court concludes that the DRA is ambiguous with regard to the precise quantum of disability

2. This three and one-half year period of disability benefit payments comports with the relevant provision in the PA, which provides that "[i]n the event that [the disability] continues for a period

of more than three and one-half years, said partner shall be considered to be permanently disabled and shall be retired from the partnership." PA, Art. 21.2.

contemplated by the parties as necessary for performance of the provisions of the DRA.

The DRA is unambiguous, however, with regard to the terms of plaintiff's disability compensation benefits and the fact that "[o]n June 30, 1994, Thompson *shall* retire and be deemed retired from Plante and Moran." DRA, ¶ 4 (emphasis added). Accordingly, the Court must determine whether plaintiff has established a genuine issue in regard to his claim that he was entitled to proclaim himself less-than-totally disabled and demand reemployment, on his terms, with defendant.

The Court has already explained the ambiguity in the DRA with regard to the requisite quantum of disability. However, it is undisputed that plaintiff has received the benefit of his bargain in the form of disability compensation benefits. Plaintiff adduces no evidence whatsoever that the parties contemplated either the possibility of a change in plaintiff's disability status or that such a change would have any effect on the unambiguous retirement agreement expressed in the DRA.

The Court notes that plaintiff's argument is further undermined by the "Consulting Activities" provision of the DRA, which states "that Thompson shall have the right to consulting work for Thompson's current client." DRA, ¶ 9. Although in the current context the Court is not empowered to make binding factual determinations, this provision of the DRA makes it highly implausible that the parties contemplated that any change in plaintiff's disability status, whether real or merely convenient, would have any effect on the agreement in the DRA that plaintiff would receive three and one-half years of disability compensation benefits and then would retire and be deemed retired from P & M.[3] *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356; *Barnhart*, 12 F.3d at 1389.

The Court concludes, then, that plaintiff has failed to establish a genuine issue with regard to the material fact of his alleged right to unilaterally alter the terms of the DRA. Accordingly, defendants will be

granted summary judgment as to plaintiff's breach of contract claim.

 Plaintiff's breach of fiduciary duty claim against individual defendants Parks and Mathews requires only brief treatment. Plaintiff provides no evidence that Parks or Mathews had a duty to seek a vote of the partnership before rejecting his request to return to work. The Court notes in this regard that plaintiff had the right to request such a vote and decided not to do so. And more importantly, given that plaintiff had no right to return to work for P & M, Parks and Mathews could not have had a duty to seek a partnership vote on that issue. Accordingly, defendants will also be granted summary judgment as to this claim.

---

3. The "Consulting Activities" provision of the DRA also makes it implausible that plaintiff was ever actually *totally* disabled in the literal sense, as opposed to merely being denominated as such for purposes of his disability compensation benefits.